IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| RITA OPIE, | CV 16-159-BLG-SPW-TJC |
| Plaintiff, | |
| vs. | **FINDINGS AND** |
| | **RECOMMENDATION OF** |
| CVS HEALTH CORPORATION,[1] | **U.S. MAGISTRATE JUDGE** |
| Defendant. | |

Plaintiff Rita Opie ("Plaintiff") brings this action against Defendant CVS
Health Corporation, erroneously sued as CVS Caremark ("Defendant" or "CVS"),
for wrongful termination and age discrimination.  (Doc. 8.)

Judge Watters has referred this case to the undersigned under 28 U.S.C. §
636(b)(1)(B).  (Doc. 15.)  Presently before the Court is Defendant's Motion to
Dismiss and Compel Arbitration.  (Doc. 3.)  The motion is fully briefed and ripe
for the Court's review.  (Docs. 4, 10, 14.)

Having considered the parties' submissions, the Court **RECOMMENDS**
Defendant's Motion to Dismiss be **DENIED**; Defendant's Motion to Compel

---

[1] The Amended Complaint names CVS Caremark as the Defendant in this action.
CVS states that its correct legal name is CVS Health Corporation.  (Doc. 3.)
Plaintiff agrees to change by amendment Defendant's name to CVS Health
Corporation.  (Doc. 10 at 13.)  Therefore, CVS Health Corporation is substituted
for CVS Caremark as the defendant in this action.

1

Arbitration be **GRANTED**; and these proceedings be **STAYED** pending

arbitration in accordance with the parties' agreement.

## I.    BACKGROUND

Plaintiff was employed by CVS as a pharmacist from March 23, 2008 until

she was terminated on February 25, 2015.  (Doc. 1-2 at ¶ 3.)  In October 2014,

CVS introduced an "Arbitration of Workplace Legal Disputes" policy (the

"Arbitration Policy" or "Policy").  (Doc. 4-1 at 3, ¶ 4.)  Pursuant to the Policy,

CVS and its' employees agreed to submit employment-related disputes to binding

arbitration.  (*Id.*)

The Arbitration Policy provides, in relevant part:

> **1.    Mutual Obligation to Arbitrate.**  Under this Policy, CVS
> Health (including its subsidiaries) and its Employees agree that any
> dispute between an Employee and CVS Health that is covered by this
> Policy ("Covered Claims") will be decided by a single arbitrator
> through final and binding arbitration and will not be decided by a
> court or jury or any other forum, except as otherwise provided in this
> Policy.  This Policy is an agreement to arbitrate disputes covered by
> the Federal Arbitration Act (9 U.S.C. §§ 1-16.)  Employees accept this
> Policy by continuing their employment after becoming aware of the
> Policy.

> **2.    Claims Covered by This Policy.**  Except as otherwise stated in
> this Policy, Covered Claims are any and all legal claims, disputes or
> controversies that CVS Health may have, now or in the future, against
> an Employee or that an Employee may have, now or in the future,
> against CVS Health, its parents, subsidiaries, successors or affiliates,
> or one of its employees or agents, arising out of or related to the
> Employee's employment with CVS Health or the termination of the
> Employee's employment.

2

Covered Claims include but are not limited to disputes regarding wages and other forms of compensation, hours of work, meal and rest break periods, seating, expense reimbursement, leaves of absence, harassment, discrimination, retaliation and termination arising under the Civil Rights Act of 1964, Americans with Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act ("ERISA") (except for claims for employee benefits under any benefit plan sponsored by the Company and covered by ERISA or funded by insurance), Genetic Information Non-Discrimination Act, and other federal, state and local statutes, regulations and other legal authorities relating to employment.

Covered Claims also include disputes arising out of or relating to the validity, enforceability or breach of this Policy, except as provided in the section below regarding the Class Action Waiver.

(Doc. 4-1 at 9-10.)

In order to implement the Arbitration Policy, CVS invited all employees to take an online training course entitled *CVS Health Colleague Guide to Arbitration* (the "Arbitration Policy Guide").  (Doc. 4-1 at 4, ¶ 6.)  The training course was made available to employees through a platform known as "LearnNet."  (*Id.* at 3, ¶ 3.)

The online training course consisted of a PowerPoint presentation, an Arbitration Policy Guide, a copy of the Arbitration Policy, and an Acknowledgement Form.  (Doc. 4-1 at 13-33.)  The Arbitration Policy Guide generally described the arbitration process, and explained that employees had the right to opt out of the Policy as follows:

3

**Colleagues' Rights**

. . .

Arbitration is a matter of contract between the colleague and CVS Health. Colleagues accept the policy by continuing their employment with CVS Health after becoming aware of the policy. With that being said, we want colleagues' participation to be voluntary. Colleagues will be asked to acknowledge and agree to the policy but from the time that a colleague first views or receives the policy, he or she has thirty days to opt out of the policy. If a colleague opts out, he or she will not be obligated to go to arbitration and can continue to use the traditional court system as before. Likewise, if a colleague opts out, CVS Health will not be required to arbitrate any disputes it has with that colleague.

**How to Opt Out**

In order to opt out, a colleague must mail a written, signed and dated letter stating clearly that he or she wishes to opt out of the CVS Health Arbitration Workplace Legal Disputes Policy. The letter must be mailed to CVS Health, P.O. Box 969, Woonsocket, RI 02895. In order to be effective, the colleague's opt out notice must be postmarked no later than 30 days after the date the colleague first views or receives the policy. Please note, sending in a timely notice is the only way to opt out. A colleague cannot opt out by refusing to compete training or attend meetings about the policy.

CVS Health will not tolerate retaliation against any colleague who decides to opt out.

(*Id.* at 27.)

Beginning on October 5, 2015, employees were notified to complete the

online training program through LearnNet and by their Store Managers. (Doc. 4-1

at 4-6, ¶¶ 6-7.) According to CVS's records, Plaintiff completed the training

program on November 22, 2014. (*Id.* at 7, ¶ 10; Doc. 11 at 9.) As part of

4

completing the training program, Plaintiff electronically signed an

Acknowledgement Form.  (*Id.* at 18, 28, 33.)  The Acknowledgment Form

provided that Plaintiff acknowledged and agreed to the following:

- that you have carefully read the CVS Health Policy, "Arbitration of Workplace Legal Disputes" (the "Policy") and understand that it applies to you;
- that you will raise any questions you may have about the Policy to your supervisor or Human Resources and may seek independent legal advice as well;
- that you can obtain copies of the Policy from your supervisor, Human Resources or the CVS Health Policy & Procedure Portal;
- that you have the opportunity, for a limited time only, to opt out of the Policy and, by doing so, not be bound by its terms;
- that, to opt out, you must mail a written, signed and dated letter, stating clearly that you wish to opt out of this Policy to CVS Health, P.O. Box 969, Woonsocket, RI 02895, which must be postmarked no later than 30 days after the date you first received or viewed a copy of this Policy;
- that by being covered by the Policy and not opting out, you and CVS Health are obligated to go to arbitration instead of court to resolve legal claims covered by the Policy;
- that by being covered by the Policy and not opting out, you and CVS Health are giving up the right to bring or participate in a class, collective or representative action brought on behalf of or regarding others to decide claims covered by the Policy;
- that this electronic communication satisfies any requirement that such communication be in writing; and
- that your click of the "Yes" button creates an electronic signature that is legally binding.

(Doc. 4-1 at 33.)

The parties dispute whether Plaintiff was obligated to opt out of the Policy

within 30 days of first receipt of the Policy through LearnNet, or within 30 of her

5

completion of the training.  Nevertheless, there is no dispute that Plaintiff did not

opt out of the Arbitration Policy within thirty days of either event; and to date,

CVS has not received any notice from Plaintiff of her intent to opt out of the

Policy.  (Doc. 4-1 at 7, ¶ 11.)  After completing the online training program,

Plaintiff continued her employment until February 25, 2015, when she was

terminated.  (Doc. 1-2 at ¶ 3.)

Plaintiff contends that she did not have time to read the arbitration policy

when she initially looked at it.  (Doc. 11 at ¶¶ 16-18.)  She further argues that by

the time she was able to review the policy, the thirty day opt-out period had

expired.  (*Id.* at ¶19, 24.)

Plaintiff initiated this action in Montana state court on February 16, 2016.

(Doc. 7.)  On October 4, 2016, Plaintiff filed an Amended Complaint.  (Doc. 8.)

Plaintiff asserts two causes of action: (1) wrongful termination and (2) age

discrimination in violation of the Age Discrimination in Employment Act, 29

U.S.C. § 623, et seq. and M.C.A. § 49-2-303(a).  (*Id.*)  On November 9, 2016, CVS

timely removed, alleging this Court has federal question jurisdiction under 28

U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. §1332.  (Doc. 1.)  CVS

now moves the Court to compel arbitration and dismiss Plaintiff's Amended

Complaint.  (Doc. 3.)

## II.    DISCUSSION

### A.    Consideration of Motion Pursuant to 9 U.S.C. § 4

CVS argues the Court should dismiss Plaintiff's Amended Complaint

pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and compel

arbitration of Plaintiff's claims.  (Doc. 4.)  The Court will treat the motion as one

to compel arbitration pursuant to 9 U.S.C. § 4.[2]  *See e.g. Perry v. Northcentral*

*University, Inc.*, 2011 WL 4356499, *3 (D. Ariz. Sept. 19, 2011) (construing

motion to dismiss based on an arbitration clause as a motion to compel arbitration

under the Federal Arbitration Act); *Service Employees Int'l Union, Local 707 v.*

*Connex-ATC*, 2006 WL 2975591, *2 (N.D. Cal. Oct. 18, 2006) (same).

The proper standard for review for motions to compel arbitration is the

summary judgment standard of Federal Rule of Civil Procedure 56(a).  *Concat LP*

---

[2] The Court notes dismissal is not appropriate under Rule 12(b)(1) because it
appears the Court has subject matter jurisdiction of the Plaintiff's claims.  In fact,
CVS removed this action from state court based upon the Court's federal question
and diversity jurisdiction.  *See e.g. Morris v. Morgan Stanley & Co.,* 942 F.2d 648,
653-54 (9th Cir .1991) ("[A]lthough § 3 requires a stay of the trial where a valid
arbitration agreement is operative, the section obviously envisages action in a court
on a cause of action and does not oust the court's jurisdiction of the action, though
the parties have agreed to arbitrate."); *Walker & Zanger (West Coast) Ltd. v. Stone
Design S.A.*, 4 F.Supp.2d 931, 937 (C.D. Cal. 1997) (rejecting argument that the
court lacked subject-matter jurisdiction because the parties were required to
resolve the dispute pursuant to the terms of an arbitration clause); *Else v. Inflight
Cinema Int'l Inc.*, 465 F. Supp. 1239, 1243 (W.D. Pa. 1979) (stating an arbitration
clause "merely limits the scope of federal review rather than depriving the district
court of its constitutionally-based diversity jurisdiction").

*v. Unilever, PLC*, 350 F.Supp.2d 796, 804 (N.D. Cal. 2004); *Coup v. Scottsdale Plaza Resort, LLC*, 823 F.Supp.2d 931, 939 (D. Ariz. 2011).  Courts may consider evidence outside of the pleadings for purposes of deciding such motions.[3]  *Regents of University of California v. Japan Science and Tech. Agency*, 2014 WL 12690187, *3, n.24 (C.D. Cal. Oct. 16, 2014) (collecting cases).

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

---

[3] In support of its motion, CVS attached documents outside the pleadings.  (*See* Doc. 4-1.)  Plaintiff responded to CVS's motion as if it were a motion for summary judgment (Doc. 10 at 4.), and submitted an affidavit from the Plaintiff, and a statement of undisputed facts, pursuant to L.R. 56.1.  (Docs. 11, 12.)  During the hearing on CVS's motion, Plaintiff's counsel advised that Plaintiff did not require the opportunity to submit additional factual material that would be pertinent to the motion.  Thus, the parties were "given a reasonable opportunity to present all the material that is pertinent to the motion," Fed.R.Civ.P 12(d), and the Court will address the motion without allowing the parties further opportunity to conduct discovery.  *See San Pedro Hotel Co., Inc.*, 159 F.3d 470, 477 (9th Cir. 1998), *citing with approval Grove v. Mead School Dist. No. 354*, 753 F.2d 1528, 1532 (9th Cir. 1985) (holding that a "represented party who submits matters outside the pleadings to the judge and invites consideration of them has notice that the judge may use them to decide a motion originally noted as a motion to dismiss, requiring its transformation to a motion for summary judgment").

### B.    The Parties' Arguments

CVS argues Plaintiff's claims are subject to arbitration under the terms of the Arbitration Policy because Plaintiff continued her employment with CVS and did not opt out of the Policy after completing the on-line training course.  Plaintiff argues no contract was formed between her and CVS regarding arbitration.  She argues she did not knowingly and intelligently agree to arbitration, and the Arbitration Policy violates Montana law.  In reply, CVS argues Plaintiff's challenge to the validity and enforceability of the Arbitration Policy is an issue for the arbitrator to decide.

### C.    Application of the Federal Arbitration Act

The Federal Arbitration Act ("FAA") governs the enforceability of arbitration agreements in contracts involving interstate commerce.  The FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  Because the Arbitration Policy here is made between citizens of different states and involves interstate commerce, the FAA governs.  *See Mississippi Fleet Card, L.L.C. v. Bilstat, Inc.*, 175 F.Supp.2d 894, 898 (S.D. Miss. 2001) ("as the subject Processing Agreement and attendant arbitration clause was

9

entered into, and was to be performed by, citizens of different states, the Processing Agreement does involve interstate commerce as that term is defined by FAA precedent"); *Elmore v. CVS Pharmacy, Inc.*, 2016 WL 6635625, * 3 (C.D. Cal. Nov. 9, 2016) (finding the FAA governed the same CVS Arbitration Policy that is at issue in this action).

The FAA declares a national policy favoring arbitration. *Southland Corp. v. Keating*, 465 U.S. 1, 2 (1984); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006). It places arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). The FAA provides that upon petition of a party, a court "shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement," if the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4.

Because arbitration is favored, Plaintiff, as the party challenging the enforceability of the arbitration agreement, "bear(s) the burden of proving that the provision is unenforceable." *Mortensen v. Bresnan Communications, LLC,* 722 F.3d 1151, 1157 (9th Cir. 2013) (citing *Green Tree Fin. Corp.-Ala. v. Randolph,* 531 U.S. 79, 91 (2000)).

"[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Chiron Corp.*, 207 F.3d at 1131 (citing *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983)).

When considering whether to compel arbitration, courts are "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  If these two requirements are met, judicial proceedings must be stayed "until such arbitration has been had in accordance with the terms of the agreement . . . ."  9 U.S.C. § 3.

## 1.      Whether the Court or Arbitrator Decides Arbitrability

As noted above, Plaintiff contends she should not be compelled to submit to arbitration because no contract was formed between the parties regarding arbitration, and the Arbitration Policy violates Montana law.  CVS counters that the Arbitration Policy explicitly delegates all disputes concerning "the validity, enforceability, or breach of [the] Policy" to the arbitrator.  (Doc. 4-1 at 10.)  CVS notes Plaintiff does not challenge the delegation provision specifically, but rather challenges the Policy as whole.  CVS argues, therefore, that Plaintiff's challenge to the Arbitration Policy should be left to the arbitrator to decide.

Gateway questions regarding arbitrability, such as the validity of an arbitration agreement or the scope of an arbitration agreement, are typically

decided by the court.  *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S.

643, 649 (1986); *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011).  But these

issues can be delegated to an arbitrator, if the parties "clearly and unmistakably"

consent.  *AT &T Techs. Inc.*, 475 at 649.  There is a presumption against delegation

of threshold issues of arbitrability.  *First Options of Chicago, Inc. v. Kaplan*, 514

U.S. 938, 944-945 (1995).  Thus, "the question of arbitrability is left to the court

unless the parties clearly and unmistakably provide otherwise."  *Momot*, 652 F.3d

at 988.

      The Supreme Court directs that when the parties have agreed to delegate

threshold arbitrability issues to an arbitrator, courts must enforce the agreement,

unless a party challenges the delegation provision specifically.  *Rent-A-Center*

*West, Inc. v. Jackson*, 561 U.S. 63, 72 (2010) ("[U]nless [plaintiff] challenged the

delegation provision specifically, we must treat it as valid . . . leaving any

challenge to the validity of the Agreement as a whole to for the arbitrator.").

      Here, the Arbitration Policy clearly delegates certain questions of

arbitrability to the arbitrator.  The Policy specifically provides any "disputes

arising out of or relating to the validity, enforceability or breach of this Policy" are

to be "decided by a single arbitrator through final and binding arbitration only."

(Doc. 4-1 at 9-10.)  Plaintiff does not specifically challenge this provision.

Therefore, issues relative to validity, enforceability and breach are for the arbitrator.

Plaintiff does challenge, however, whether a contract was ever formed between herself and CVS.  Specifically, Plaintiff contends she did not knowingly and intelligently agree to be bound by the Arbitration Policy.  In *Rent-A-Center,* the Supreme Court noted that "the issue of the agreement's 'validity' is different from the issue of whether any agreement between the parties 'was ever concluded.' *Id.* at 71 n.2.  *See also Buckeye Check Cashing, Inc. v. Cardegna*, 546 u.S. 440, 444 n.1 (2006) ("The issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and oblige was ever concluded.").

The Arbitration Policy here is silent as to who is to determine whether a contract was ever concluded between the parties. Therefore, the parties did not "clearly and unmistakably" consent to arbitration of the issue of formation or existence of an arbitration contract, and the question of whether an agreement was entered into in the first instance is for the Court to decide.  *See* 9 U.S.C. § 4; *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007) ("Issues regarding the *validity* or *enforcement* of a putative contract mandating arbitration should be referred to an arbitrator, but challenges to the *existence* of a contract as a

13

whole must be determined by the court prior to ordering arbitration.") (emphasis in original).

Thus, to the extent Plaintiff's challenge goes to the existence of the contract, the Court must determine whether the parties entered into a binding arbitration agreement. If it is determined that a contract was formed, Plaintiff's challenges to the validity and enforceability of the Arbitration Policy should be left to the arbitrator.

### 2. Whether the Parties Entered Into an Agreement to Arbitrate

"Arbitration is a matter of contract and a party cannot be required to submit any dispute which he has not agreed so to submit." *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). Therefore, when one party disputes "the making of the arbitration agreement," the FAA requires the court to hear and decide the issue before compelling arbitration. 9 U.S.C. § 4; *Sanford*, 483 F.3d at 962. Lack of consideration or lack of mutual assent may invalidate an arbitration agreement. *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002). In assessing the making of an arbitration agreement, courts "should apply ordinary state-law principles that govern the formation of contracts." *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002).

In Montana, the essential elements of a contract are "(1) identifiable parties capable of contracting; (2) their consent; (3) a lawful object; and (4) a sufficient

cause or consideration." *Hurly v. Lake Cabin Dev., LLC*, 364 Mont. 425, 430-431 (2012) (citing M.C.A. § 28-2-102).  The Court finds Plaintiff and CVS are parties "capable of contracting," an agreement to arbitrate constitutes "a lawful object," and the Arbitration Policy is supported by "sufficient consideration" because CVS promised to be mutually bound by arbitration.  *See Najd*, 294 F.3d at 1108.  The main dispute in this case is, therefore, whether Plaintiff consented.

The Court finds that Plaintiff consented to the Arbitration Policy.  A party's assent may be inferred based on their outward, objective manifestations.  *Olsen v. Johnston*, 368 Mont. 347, 350 (2013).  "Parties have consented if, based on their words and conduct, a reasonable person would conclude that they intended to be bound by the contract."  *Id.*  In *Najd*, the Ninth Circuit noted that generally silence or inaction do not constitute acceptance.  *Najd*, 294 F.3d at 1109.  Nevertheless, the Court stated that where the circumstances or course of dealing between the parties place the offeree under a duty to act or be bound, silence or inaction can constitute assent.  *Id.*

In *Najd*, an employer had instituted an arbitration program that bound its current employees to arbitration unless they opted out.  *Id.* at 1106.  There, the employee acknowledged receipt of the arbitration agreement in writing and did not opt out within the thirty day period provided for doing so.  *Id.* at 1109.  The Court held that under those circumstances, the employee had implicitly consented to the

agreement by failing to opt out.  The Court reasoned when "inaction is

indistinguishable from overt acceptance, we may conclude the parties have come

to agreement."  *Id.*

Here, CVS's records reflect Plaintiff completed the online training course

regarding the Arbitration Policy.  (Doc. 4-1 at 7; ¶ 10.)  The training course

required Plaintiff to click a link that displayed the Arbitration Policy and the

Arbitration Policy Guide.  (*Id.* at 16.)  The training course clearly and

unambiguously described Plaintiff's rights relating to arbitration, the manner in

which the Policy would be accepted, and how Plaintiff could opt-out if she wished.

(*Id.* at 21-33.)  To receive credit for completing the course, Plaintiff was required

to electronically sign an Acknowledgment Form.  (*Id.* at 15, 17-19, 28.)   Plaintiff

does not dispute she completed the online training program.  Plaintiff also does not

deny electronically subscribing the Acknowledgment Form confirming she read

the Policy and understood she had thirty days to opt out.  (*Id.* at 18, 33.)  After

completing the training program, Plaintiff continued to work for CVS, and never

attempted to opt out of the Arbitration Policy.  (*Id.* at 7, ¶ 11.)

Based on these circumstances, the Court finds Plaintiff consented to the

Arbitration Agreement by not opting out and continuing her employment after

having acknowledged reviewing the Policy.  *See e.g. Elmore v. CVS Pharmacy,*

*Inc.* 2016 WL 6635625 *3 (C.D. Cal. Nov. 9, 2016) (holding the plaintiff

manifested his consent to the same CVS Arbitration Policy that is at issue in this case by digitally signing the Acknowledgment Form, not opting out, and continuing to work for CVS); *Tillman v. Macy's Inc.*, 735 F.3d 453 (6th Cir. 2013) (stating an employee's conduct after being notified of the employer's new arbitration policy objectively suggested "she accepted the arbitration agreement by continuing her employment without returning the opt-out form"); *Taylor v. Tree*, 2016 WL 6523442, *3 (N.D. Ind. Nov. 3, 2016) (finding the plaintiff assented to the terms of an arbitration agreement that had been implemented after he was hired because he accessed the agreement and did not opt out by the deadline); *Johnson v. Harvest Mgmt. Sub TRS Corp. –Holiday Ret.*, 2015 WL 5692567 (S.D. Ind. Sept. 25, 2015) (same).

Plaintiff contends in a sworn declaration that she did not read the Policy until after the time to opt out had expired, and therefore she should not be bound by it. *See* Doc. 11 at ¶ 17, 19.  The Court rejects this contention.  First, Plaintiff's statements in her declaration with respect to her consent to enter into the agreement do not create a fact issue in this regard.  "A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."  *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997).

17

Plaintiff's declaration indicates that although she completed the training course, she initially "only had a few minutes to begin reading [the Arbitration Policy]," and that she decided she would log back in and carefully review it when she had more time. (Doc. 11 at ¶¶ 17-18.)  She asserts that by the time she read the policy she "was past the 30 day opt out period." (*Id.* at ¶ 19.)  Had she known of the opt out policy, Plaintiff states she would have opted out within 30 days. (*Id.* at ¶ 22.)

Plaintiff offers no objective evidence to corroborate her statements.  Thus, her conclusory and self-serving statement does not create a fact issue with respect to her intentions to agree to the Arbitration Policy.  Her intent will instead be inferred from the language of the Acknowledgment Form she digitally subscribed, and her conduct of failing to opt out and continuing to work for CVS.

Second, Plaintiff may not argue that she is not bound because of her own failure to read the contract. *Golenia v. Bob Baker Toyota*, 915 F. Supp. 201, 204 (S.D. Cal. 1996).  A party may not avoid the effects of a contract by failing to read it. *Kummetz v. Tech Mold, Inc.*, 152 F.3d 1152, 1156 (9th Cir. 1998).  Further, the evidence indicates Plaintiff was aware of the Arbitration Policy, even if she chose not to read it.  "A contract need not be read to be effective; people who accept take the risk that the unread terms may in retrospect prove unwelcome." *Hill v. Gateway 2000*, 105 F.3d 1147, 1148 (7th Cir. 1997).

18

Third, regardless of whether the opt out period began to run when the Arbitration Policy was initially rolled out on October 5, 2014, or when Plaintiff completed the training course on November 22, 2014, the fact remains that Plaintiff has never attempted to opt out of the Policy.  If Plaintiff's statements were sufficient to defeat an arbitration agreement such as this, it would effectively eliminate their enforceability.  A party would only have to allege that they did not timely review the agreement; and had they done so, they would have chosen to opt out of the agreement.

Therefore, the Court determines under the facts and circumstances of this case, Plaintiff consented to the Arbitration Policy.  Because Plaintiff consented to the Policy, and the Policy contains a delegation provision that has not been specifically challenged, Plaintiff's remaining arguments regarding the validity and enforceability of the Policy under Montana law are for the arbitrator to decide. *Rent-A-Center West, Inc. v. Jackson*, 561 U.S. at 72.

### 3.     Whether the Assertion of Arbitrability is Wholly Groundless

If the Court determines the parties delegated the "power to decide arbitrability to an arbitrator, then the court should perform a second, more limited inquiry to determine whether the assertion of arbitrability is 'wholly groundless.'" *Qualcomm Inc. v. Nockia Corp.*, 466 F.3d 1366, 1371 (Fed. Cir. 2006).  Here, the Arbitration Policy calls for arbitration of "any and all legal claims, disputes or

controversies that . . . an Employee may have, now or in the future, against CVS Health . . . arising out of or related to the Employee's employment with CVS Health or the termination of the Employee's employment."   (Doc. 4-1 at 9.)  The Policy further provides for arbitration of disputes regarding "termination arising under the . . . Age Discrimination in Employment Act." (*Id.* at 9-10.)  Plaintiff's Amended Complaint alleges two causes of action arising out of her employment and termination from CVS, including a claim for wrongful termination and age discrimination.  (Doc. 8.)  Therefore, it is clear the Arbitration Policy encompasses these disputes, and CVS's assertion of arbitrability is not wholly groundless.

### 4.      Whether Stay or Dismissal is Appropriate

The FAA provides that courts shall stay actions pending arbitration.  9 U.S.C. § 3.  The Ninth Circuit has held, however, that courts have discretion to dismiss an action if all of the plaintiff's claims are subject to arbitration.  *Sparling v. Hoffman Construction Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (stating the FAA "gives a court authority, upon application by one of the parties, to grant a stay pending arbitration, but does not preclude summary judgment when all claims are barred by an arbitration clause").

Here, the Court finds the appropriate course of action is to stay the case.  Although the Court has found the parties entered into an agreement to arbitrate that encompasses Plaintiff's claims, Plaintiff's challenges regarding the validity and

enforceability of the Arbitration Policy under Montana law are still subject to resolution by the arbitrator.  Because the threshold arbitrability disputes could be decided in Plaintiff's favor, the Court recommends the proceedings be stayed pending arbitration.

## III.   CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that Defendant's Motion to Dismiss be **DENIED;** its Motion to Compel Arbitration be **GRANTED**; and this action be **STAYED** pending arbitration in accordance with the parties' agreement.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

**IT IS ORDERED**.

DATED this 30th day of June, 2017.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge